**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

v.               CRIMINAL ACTION NO. 2:09-cr-00102

TELFORD CRUIKSHANK, JR.,

      Defendant.

**MEMORANDUM OPINION AND STATEMENT OF REASONS**

    The United States charged Telford Cruikshank, Jr. with possessing or knowingly accessing with intent to view child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The offense carries a maximum term of ten years' imprisonment. Mr. Cruikshank pleaded guilty on May 18, 2009. The Sentencing Guidelines recommend a sentence of 46 to 57 months in prison, with a term of supervised release between 5 years to life. As explained below, such a sentence would be unreasonable in this case. I thus sentence Mr. Cruikshank to 24 months in prison, followed by 15 years of supervised release, in addition to a special assessment of $100.

**I. Guidelines Calculation**

    In imposing sentence, a district court must "treat the Guidelines as the starting point and initial benchmark." *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007) (internal quotation marks omitted). It must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a). The Guidelines are advisory, and a sentencing court "may hear arguments" that "the Guidelines sentence

. . . fails properly to reflect § 3553(a) considerations, or perhaps . . . the case warrants a different sentence regardless." *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007).

I will begin by calculating Mr. Cruikshank's Guidelines sentence. The Guideline for violation of 18 U.S.C. § 2252A is found at U.S.S.G. § 2G2.2(a)(1). It provides a base offense level of 18. Three specific offense characteristics under § 2G2.2 apply here. Subsection (b)(2) provides for a two-level enhancement because the material involved a prepubescent minor; subsection (b)(6) provides for a two-level enhancement because the offense involved the use of a computer; and subsection (b)(7)(C) provides a four-level enhancement because the offense involved over 300, but less than 600, images. Following a three-level reduction for acceptance of responsibility and assisting authorities under § 3E1.1(a) and (b), respectively, the Guidelines total offense level is 23. Mr. Cruikshank has no criminal history and therefore has a criminal-history category of I. This analysis results in a Guidelines sentence of 46-57 months in prison.

## II.  Statement of Reasons

Having calculated Mr. Cruikshank's Guidelines sentence, I must now consider the seven factors provided in 18 U.S.C. § 3553(a). After considering these factors, I must impose a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing: punishment, deterrence, and protection of the public. 18 U.S.C. § 3553(a)(2). These factors lead me to conclude that a below-Guidelines sentence is warranted in this case.

### A.  Nature and Circumstances of the Offense

Mr. Cruikshank paid for online access to child pornography on his work computer. On one occasion he paid $49.95 for 30 days' access, and on another he paid $94.95. He also viewed child pornography by using a free online search engine. Some of the images he viewed portrayed very

young children, some under ten years of age. Notably, however, Mr. Cruikshank did not save these images to the hard drive of his computer. He did not email them, distribute them via peer-to-peer software, upload them, trade them, or otherwise show them to anyone else.

A federal investigation uncovered the records of the two websites, and agents identified Mr. Cruikshank as a subscriber. On March 14, 2007, a search warrant was executed at Telford Chevrolet, where Mr. Cruikshank worked. A total of 986 images of suspected child pornography were stored in temporary files on Mr. Cruikshank's computer. Mr. Cruikshank permitted the government to search his home computer. No illegal images were found there.

### B. History and Characteristics of the Defendant

Mr. Cruikshank is forty-three years old and has no criminal history. He and his wife have been married for nineteen years, and they have two teenage daughters. After attending college, Mr. Cruikshank worked at his father's car dealership as a sales manager. In March 2007, the dealership went out of business. Mr. Cruikshank purchased an appraiser franchise eight months later. As a result of Mr. Cruikshank's guilty plea, the franchisor terminated the franchise in July 2009.

Mr. Cruikshank is active in his church. His family is close and supportive. He has never personally abused a child, and psychological reports show that he has no inclination to do so.

### C. The Need for the Sentence Imposed

> *1. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

This offense is serious. By paying for access to images of child pornography, Mr. Cruikshank supported the creation and distribution of images depicting the sexual abuse of children by driving up demand for new images and rewarding those who create them. *See United States v. Duhon*, 440 F.3d 711, 719 (5th Cir. 2006) ("Possession of child pornography is not a victimless

crime. A child somewhere was used to produce the images downloaded . . . because individuals like [the defendant] exist to download the images.").

The harm caused by child pornography cannot be overstated. Congress has found that child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved." Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121, 119 Stat. 3009, 3009-26 (1996) (codified as amended at 18 U.S.C. § 2251). Congress has determined that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *Id.* It has explained its belief that mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." *Id.* § 121, 110 Stat. at 3009-27.

I agree with the market-based reasoning that tough sentences are needed in response to this crime. Were it not for men like Mr. Cruikshank—men who feed their prurient desires by viewing images of helpless children being molested and raped—the market for this material would dry up. I disagree, however, with the premise that this conduct must necessarily be punished severely because a viewer of child pornography is more likely to physically abuse a child. Such a link has not been sufficiently established. *See* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* 31-33, July 3, 2008, http://www.fd.org/odstb_SentencingResource3.htm (discussing studies). Simply because pedophiles often collect child pornography does not compel the conclusion that a possessor of such pornography will become a pedophile.

> 2. *To afford adequate deterrence to criminal conduct.*

The harshness of the sentences for possession of computer-based child pornography aims at deterring others from similar conduct. One news account approximates that up to 600,000 people in the United States trade images of children being sexually abused. Keith Leslie, *Child Porn Scourge Creates More Suspects than Can Be Arrested*, The Canadian Press (Feb. 4, 2009). If accurate, this number is staggering, particularly considering that it is three times the overall number of persons incarcerated in federal prison in 2008. Press Release, Bureau of Justice Statistics, *Growth in Prison and Jail Populations Slowing: 16 States Report Declines in the Number of Prisoners*, March 31, 2009, http://www.ojp.usdoj.gov/bjs/pub/press/pimjim08stpr.htm. The explosive growth of the internet and access to online sources is likely to enable greater access to these images. Harsh sentences are needed to deter others from engaging in this conduct. I find that this sentence, despite being below that recommended by the Guidelines, will provide adequate deterrence.

> *3. To protect the public from further crimes of the defendant.*

I am confident that any period of imprisonment will protect the public from the crimes of this defendant. He has already been punished by the strong social stigma that attaches to these types of offenses. Not only has his reputation been forever tarnished, but his family has also suffered. Mr. Cruikshank has lost his job and has fought to be allowed to continue living with his daughters. I place great weight on the fact that mental-health professionals—based on four separate risk assessments—have determined that he is not likely to re-offend, is not a sexual predator, and is a low risk to the community. Furthermore, he continues to receive sex-offender-specific therapy. This sentence, the societal punishment that has already been imposed upon Mr. Cruikshank, and his continued therapy should deter him from re-offending.

> *4. To provide needed educational or vocational training or other correctional treatment.*

The court recommends that Mr. Cruikshank be incarcerated in a facility as close as possible to his wife and children. Mr. Cruikshank has undergone, and continues to receive, mental-heath therapy since his arrest. He has accepted responsibility for his actions and has consistently sought and taken advantage of all opportunities for rehabilitation available to him. Hopefully he will be able to take advantage of such programs during, and following, his imprisonment.

### D. The Kinds of Sentences Available

The court has considered the kinds of sentences available. The statutory range of imprisonment is up to ten years. Because Mr. Cruikshank did not distribute any images, there is no mandatory minimum sentence. And since this involves a Class C felony, probation is available. Probation, however, would be inadequate to deter others from engaging in this conduct. A term of imprisonment is needed to underscore the severity of this offense.

### E. The Sentencing Range Established by the Sentencing Commission

The Guidelines range in this case is 46-57 months' imprisonment, with a supervised release term of five years to life.

### F. Need to Prevent Unwarranted Sentencing Disparities

Because of the inequities presented by § 2G2.2, a number of courts have imposed below-Guidelines sentences, even in mine-run cases. Between July 1, 2009 and September 30, 2009, district courts imposed within-Guidelines sentences under § 2G2.2 in only 44.6% of cases, compared to the overall average of 55.2%. Of the 662 cases that imposed sentences outside of the Guidelines range, 449 were below range. U.S. SENTENCING COMM'N, PRELIMINARY QUARTERLY DATA REPORT 14 (2009), http://www.ussc.gov/linktojp.htm. Here, a number of facts warrant a sentence below that imposed in the mine-run case. Mr. Cruikshank did not store any of the photographs in a place where

they could be readily retrieved. He poses the lowest danger of re-offending. He has eagerly sought treatment. Thus, a below-Guidelines sentence in this case would avoid creating unwarranted sentencing disparities.

## III.  Discussion

Mr. Cruikshank knowingly viewed on his workplace computer hundreds of images of young children being brutalized. In so doing, he was a willing participant in a poisonous market that destroys the innocence of countless young lives.

The exploitation of children is pandemic. The most vulnerable members of our society have been exploited and discarded. Those who traffic in or consume child pornography must be punished severely. Indeed, the Supreme Court has recognized that punishing child pornography consumers is a compelling state interest. *See Osborne v. Ohio*, 495 U.S. 103, 110 (1990) ("[I]t is now difficult, if not impossible, to solve the child pornography problem by only attacking production and distribution.").

Yet a spectrum of criminal culpability is involved in this crime. Those who produce and distribute these images are at one end of the spectrum. They deserve the harshest punishment. At the other end of the spectrum are men like Mr. Cruikshank who view these disgusting images. Rather than physically harming a child, their criminal act is complete by entering a market with a few clicks of a mouse. From my experience, most of these men, like Mr. Cruikshank, have no prior criminal history. They usually have healthy family lives and productive careers. While these men bear responsibility for the horrors created by child pornography, any system of justice must attempt to emotionally remove itself from natural instincts of revenge and retribution. *See United States v. Baird*, 580 F.Supp.2d 889, 895 (D. Neb. 2008) ("It is clear that one possessing child pornography

has far less culpability than one distributing pornography, who, in turn, has far less culpability than one who produces child pornography.").

These pathetic men make easy targets. There is nothing redeeming or even understandable about this crime. But judges must objectively consider whether the sentences imposed further the goals of punishment. To do so, we must differentiate between those who create child pornography and those who consume it.

Section 2G2.2—the child pornography Guideline—is not entitled to the usual deference due the Guidelines. The Sentencing Commission was established to eliminate gross disparities in sentencing, to control crime through incapacitation and deterrence, and to rehabilitate offenders. *See United States v. Booker*, 543 U.S. 220, 253 (2005) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."). The Sentencing Guidelines are generally "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 128 S. Ct. 586, 594 (2007). Some, however, like § 2G2.2, are not grounded in empirical analysis, but rather on statutory directive. *See* Stabenow, at 4-24 (detailing the legislative history of the child pornography Guidelines). The Supreme Court has recognized that such Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role." *Kimbrough*, 128 S. Ct. at 574.

Because they are not based on empirical data and past practices, the Guidelines for consumers of computer-based child pornography are skewed upward. Instead of imposing enhancements for more severe offenses, the § 2G2.2 enhancements apply in nearly every case. *See* U.S. SENTENCING GUIDELINES MANUAL, Supp. to App. C, Amendment 664, at 58 (noting "several

specific offense characteristics which are expected to apply in almost every case (e.g., use of a computer, material involving children under 12 years of age, number of images)"). There is a two-level increase if the material involved a minor under the age of twelve, a two-level increase if the material portrays sadistic or masochistic conduct; and an anachronistic two-level increase if the offender used a computer. Furthermore, § 2G2.2 imposes quantity-based enhancements untethered to moral culpability. An offender possessing between 10 and 150 images receives a two-level increase; between 150 and 300 receives a three-level increase; between 300 and 600 incurs a four-level increase; and over 600 images warrants a five-level increase. I fail to understand how an offender with 9 images of children being sexually abused is less culpable than one with 601 such images. While both offenders have committed the same crime—the only difference being a marginal increase of demand on the market—they will have Guidelines sentences that could vary by several years. In an instance of troubling irony, an individual who, sitting alone, obtained images of sexually exploited children on his computer, could receive a higher sentence than the Guidelines would recommend for an offender who actually rapes a child. *See* Stabenow, at 27-29.

Judges and commentators have challenged the inequities of the child pornography Guidelines. Some have categorically rejected § 2G2.2 on policy grounds. *See, e.g.*, *United States v. Beiermann*, 599 F.Supp.2d 1087, 1100 (N.D. Iowa 2009) (collecting cases). Others recognize that it is due less weight than empirically based Guidelines. *See, e.g.*, *United States v. McEleney*, 630 F. Supp.2d 886, 895 (E.D. Tenn. 2009). As explained above, sentencing statistics reflect this growing dissonance. While I am tempted to join those courts that have categorically rejected § 2G2.2, I decline to do so. Rather, having taken the Guidelines sentence into account and considered

the § 3553(a) factors as they apply to Mr. Cruikshank, I conclude that a 24-month sentence would best suit the ends of justice in this case.

## V. Conclusion

Possessors of child pornography are modern-day untouchables. We cannot fathom how they can be aroused by images of prepubescent children being brutalized. And, because we cannot imagine that we personally know anyone so perverted, we are not bothered by the idea that these men are cast out to serve long periods in prison. Their prurient interests are so foreign that our citizens want them permanently removed from society. Many fear that those who view these images will also personally harm a child. And, wanting to punish *someone* for the crimes that these horrible images embody, society seeks harsh sentences for anyone who participates in this market. Rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies for the depraved producers and publishers. The resulting punishment under the Guidelines may be more a reflection of our visceral reaction to these images than a considered judgment of the appropriate sentence for an individual defendant.

The Supreme Court has admonished lower courts with 3553(a)'s "overarching instruction" that district courts shall "impose a sentence sufficient but not greater than necessary" to achieve sentencing goals. *Kimbrough*, 128 S. Ct. at 575. I remain mindful that the Guidelines are not to be presumed reasonable, *Nelson v. United States*, 129 S. Ct. 890, 892 (2009), and that they should not be substituted for my independent determination of a just sentence based on the § 3553(a) factors, *Spears v. United States*, 129 S. Ct. 840, 843-44 (2009). Taking into account the advisory Guidelines sentence and the § 3553(a) factors, the goals of sentencing are met in this case with a 24-month sentence.

Two years is a substantial prison term. Once released, Mr. Cruikshank's ability to find work will likely diminish, as will the number of places where he will be able to live. He and his family will forever wear the stigma of his conviction. Furthermore, the fifteen-year period of supervised release, with a number of conditions, is a severe restriction on Mr. Cruikshank's freedom. *Cf. Gall*, 128 S. Ct. at 595 ("Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."). This period will ensure that Mr. Cruikshank reintegrates into society and receives adequate treatment. Aside from this offense, Mr. Cruikshank has led a proper life. Once released, I am certain he will continue to do so.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal. The court further **DIRECTS** the Clerk to post this published opinion at *http://wvsd.uscourts.gov*.

ENTER:     November 6, 2009

Joseph R. Goodwin, Chief Judge